Jimmy MILLER *v.* STATE of Arkansas

CR 89-12                                           770 S.W.2d 144

Supreme Court of Arkansas
Opinion delivered May 22, 1989

*James L. Sloan*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Denhammcclendon*, Asst.
Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. The appellant was charged with keeping a gambling house. He filed a motion to suppress evidence obtained pursuant to a search warrant. The trial court denied the motion to suppress, and appellant entered a conditional guilty plea, reserving the right under A.R.Cr.P. Rule 24.3(b) to appellate review of the trial court's ruling. We now uphold that ruling, and affirm the appellant's conviction.

The sole issue on appeal is whether the search warrant used to obtain the evidence against the appellant described the place to be searched with sufficient particularity. The Little Rock Police Department received information from a confidential informant that the appellant, James Franklin Miller, was a bookie who operated out of his pawn shop at 6323 Asher Avenue in Little Rock. The police then conducted a two-week surveillance of the appellant's pawn shop, and discovered that he was also using the shop as his residence. With the help of the confidential informant, the police placed several bets over the phone with someone named Jimmy, presumably the appellant. They then contacted the phone company and determined that the number they were calling to place the bets was installed at a business named the Quick Cash Pawn Shop, located at 6323 Asher, which was listed in the name of Frank Miller, the appellant. They further determined that the phone calls were not being forwarded to another number.

Based upon all of this information, the police obtained a search warrant to search the appellant's business. The warrant gave a thorough description of the premises, and indicated that access could be gained either through the front glass doors of the building, or through a door located at the rear of the premises. The police had not actually observed the appellant using the rear door, but because of its location at the rear of the building, they reasonably assumed that it would provide access to the pawn shop. When the police arrived at the appellant's place of business to execute the search warrant, they parked in back to avoid drawing attention to themselves. However, just as they were parking, the appellant came out of the rear door and met them. The officers identified themselves and showed him the search warrant, explaining that they were there to search his business premises. The appellant made no effort to direct the police to the front of the building, or to inform them that the rear door did not lead to the pawn shop. He had left the rear door open, and the

officers stepped inside. They were quite surprised to find themselves inside a 6' x 6' cubicle that provided no means of access to the appellant's pawn shop. The cubicle contained several telephones and assorted gambling paraphernalia, which the police seized.

The appellant filed a motion to suppress the evidence seized from the cubicle, arguing that the warrant did not describe the cubicle with particularity, as is required by both the United States and Arkansas Constitutions and the Arkansas Rules of Criminal Procedure. After a lengthy hearing, the trial court refused to suppress the evidence, finding that the description in the search warrant was adequate. We agree.

The United States Supreme Court upheld a search warrant under similar circumstances in *Maryland* v. *Garrison*, 480 U.S. 79 (1987). In *Garrison*, Baltimore police officers obtained and executed a search warrant covering the person of one McWebb and the premises known as "2036 Park Avenue third floor apartment." The police reasonably believed that there was only one apartment on the described premises, but as it turned out, the third floor of the building was divided into two apartments. The police searched the wrong apartment and seized evidence they found therein. The Supreme Court upheld the trial court's denial of the appellant's motion to suppress the evidence, finding that both the warrant and its execution were valid.

The Supreme Court first considered the validity of the search warrant itself. The Court found that the description in the warrant was broader than necessary only because of the mistaken belief of the police that there was only one apartment on the third floor of the building in question. The Court noted that the warrant would undoubtedly have been valid if it had reflected a completely accurate understanding of the building's floor plan. The Court held that it must judge the constitutionality of the officers' conduct in light of the information available to them at the time they acted and that evidence which emerges after a warrant is issued does not retroactively invalidate the warrant. The Court found the officers' conduct completely reasonable under the circumstances and upheld the validity of the warrant.

The Court in *Garrison* next considered the execution of the warrant, and found that it, too, was valid. The Court held that the

validity of the search depended upon whether the officers' failure to realize the overbreadth of the warrant was objectively understandable and reasonable. The Court found the officers' mistake perfectly reasonable, noting that the objective facts available to them at the time of the execution suggested that there was no distinction between McWebb's apartment and that of the entire third-floor premises. The Court noted in a footnote that although the officers met McWebb outside the building and he accompanied them upstairs to the third floor, he said nothing to indicate there were two separate apartments on the floor, or that they were searching the wrong one.

In *Moore* v. *State*, 297 Ark. 296, 761 S.W.2d 894 (1988), we applied *Garrison* to a similar set of facts, upholding a warrant and its execution on a residence which from all appearances was a single family dwelling, but in actuality it turned out to contain several "leased" bedrooms. In *Moore* the appellants also failed to bring the multi-unit nature of the dwelling to the officers' attention, despite the opportunity to do so.

We find the reasoning of *Garrison* and *Moore* applicable to the instant case. The mistake of the police officers here was also perfectly reasonable and understandable. The officers had studied the outside of the appellant's business premises for two weeks, and had every reason to believe that the back door to this building would provide access to the appellant's pawn shop. The evidence at trial revealed that it was impossible to look in the front glass of the pawn shop and determine that the back door did not connect to it; thus, there was no way the officers could have discovered the existence of this separate cubicle without a copy of the building's floor plan. We find that the officers did all that was reasonably necessary to determine the location of the bookie operation before obtaining the search warrant. Indeed, they had even gone so far as to subpoena phone records in an attempt to make sure that the bookie operation was being conducted on the premises. Based on the objective facts available to the officers at the time they obtained the warrant, the description of the place to be searched was adequate, and thus, the warrant was valid.

We also find that the execution of the warrant was valid. The officers had no reason to suspect that the rear door did not lead to the appellant's pawn shop until they got inside the

cubicle. Further, the appellant made no attempt to inform them of their mistake, although he had ample opportunity to do so.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. The central issue in this case is whether the search warrant used to obtain the evidence described the place to be searched with sufficient particularity. The warrant authorized a search of the Quick Cash Pawn Shop, located at 6323 Asher Avenue in Little Rock. The business was operated by the appellant, who also lived in the same building. The place actually searched is a 6' x 6' concrete cubicle located in another part of the strip shopping center. Its only door opens into the alley to the west of the building. There was also a back entrance to the pawn shop, but it opened along the southern wall of the building.

This property and the adjacent property on Asher Avenue consists of an L-shaped building. The long top end of the L abuts on Asher Avenue; the lower part extends eastward from the south end of the L to a point which also is the east wall of the building occupied by the appellant. The pawn shop had a glass front window facing Asher Avenue which apparently enabled the police to observe the appellant's business for a period of two weeks. What they observed is not known.

It was impossible for the officers, or anyone else situated across Asher Avenue, to observe the alleged bookmaking which was being conducted in the 6' x 6' concrete cubicle. All they could have seen was that the appellant was carrying on some sort of business in the pawn shop. Since there is no possible point of entry between the pawn shop in the short section of the building and the cubicle where the appellant was arrested, it is quite unlikely that the police observed any illegal activity whatsoever.

The results of the search warrant are not to be considered in determining the reasonableness for the issuance of the search warrant. As usual, there was a confidential informant. His information, coupled with verification by telephone by the police, was all that was furnished, apart from the telephone listing for the issuance of the search warrant.

Even if there had been a proper foundation for the warrant, it was issued for the wrong address. Therefore, the police had no right to search the 6' x 6' cubicle which faced the alley because it was neither a part of the pawn shop nor located at 6323 Asher Avenue.

I am not particularly troubled by the holding of the court that there was probable cause for the issuance of a search warrant. It bothers me, however, that the majority fails to discern the difference in the address authorized to be searched and the place actually searched. Absent the appellant's invitation, the police had no right to search the cubicle where he allegedly operated a gambling house. Moreover, it is most difficult for me to visualize a gambling house operating in a 6' x 6' concrete cubicle which has no facilities for the accommodation of even one patron.

My greatest objection to this opinion is identical to that stated in the dissent in *Thompson* v. *State*, 298 Ark. 502, 769 S.W.2d 6 (1989). So far as I am concerned, you cannot make a gambling house out of a telephone booth. My real dissent is addressed to the law and the wrong interpretation this court has long given to it.